STELLA B. NIGHTINGALE *vs.* CHARLES A. LEITH.

Aroostook.     Opinion November 18, 1921.

*A rescission by agreement of a contract to marry is a matter of mutual intention on the part of both parties to the contract, and implies an existing and unbroken contract.*

In an action for breach of promise of marriage in which the plaintiff recovered a verdict of $6,000, and now before this court on defendant's general motion, it is,

*Held:*

1.  That the making of the contract is conceded.

2.  That its breach by defendant is clearly shown by the evidence.

3.  That the letter written by the plaintiff, on the next day after the breach, neither in fact nor in law proved a mutual rescission of the contract. Rescission by agreement is a matter of intention and taking the entire contents of the letter together it is obvious that no such intention existed in the plaintiff's mind.

4.  Moreover, rescission by agreement implies an existing and unbroken contract, not a broken one, and in this case the contract was broken before the letter was written.

On motion for a new trial.  This is an action for breach of promise of marriage.  The defendant pleaded the general issue, and under a brief statement alleged "that if any contract existed between the parties to this action it was rescinded by mutual agreement."  A verdict for the plaintiff was returned by the jury of $6,000, whereupon the defendant filed a general motion for a new trial.  Motion overruled.

The case is fully stated in the opinion.

*Shaw & Cowan,* for plaintiff.

*Powers & Guild, and W. R. Pattangall,* for defendant.

SITTING: CORNISH, C. J., SPEAR, HANSON, DUNN, MORRILL, DEASY, JJ.

CORNISH, C. J.  The material and uncontroverted facts are as follows:  The plaintiff, a school teacher, and the defendant, a prosperous farmer, both of admittedly good standing and character, after an acquaintance of several months entered into a contract of marriage on November 5, 1918.  The following Christmas the defendant gave the plaintiff a diamond ring in token of their engagement.  These relations continued without interruption during the following year, and in the fall of 1919 the parties made their plans for marriage and a winter in Florida.  About Thanksgiving 1919, however, the defendant's attentions began noticeably to wane.  He visited the plaintiff less frequently than in the past and his promises to call on various occasions were not kept.

One day the plaintiff happened to overhear a telephone conversation between the defendant and a Miss Ginn, in which they were arranging for a meeting the next day and also for dates near Christmas.  Later the same day, the plaintiff telephoned the defendant and evidently desired an explanation.  He replied that she should not be "rubbering," and said that he would come in and see her. This he did, on the same day when the following conversation took place:

"Q.  What talk did you have at the store?

A.  He came into the store; I was near to the door, right up next to the door.

Q.  Inside the store?

A.   Inside the store.   He says 'are you ready to give me that ring'?

Q.   Go ahead.

A.   I told him no I wasn't ready.

Q.   Did you have some talk with him?

A.   He said it didn't make any difference whether I gave it to him or not, he was all done with me.   I told him I didn't think he had any reason for being done with me, and he had better think over what he was saying."   Clearly this was a breach of the contract of marriage on the part of the defendant.   He was "all done" with the plaintiff, that is, he no longer bound himself by the engagement and he would no longer keep his promise.

The next day the plaintiff saw the defendant on the street talking with the woman with whom he had been telephoning but no conversation was then held between the plaintiff and defendant.   On January first the plaintiff met and talked with the defendant when he reiterated his renunciation of the engagement in no uncertain language. Her testimony on this point is as follows:

"Q.   Did you have some talk with him there?

A.   Yes.   I asked him to think over what he had been doing.   He told me it didn't make any difference what I said; I might as well keep still; he was all done with me."

The latter part of January, however, the defendant seemed repentant.   He called upon the plaintiff, told her that he was very sorry he had "treated her so mean," and asked her if she did not think he had.   She assented.   Whether the defendant was sincere in this may well be doubted.   No old promise was renewed, and no new one was made, but the statement may have served to temporarily allay the plaintiff's anxiety.   The plaintiff was out of town for a time after this and after her return she telephoned the defendant's house. A woman's voice answered the call.   The defendant then was summoned and the plaintiff told him that she wanted to see him and asked him to call.   Concealing the true situation he promised to do so, but did not.   That was on March first.   The next morning she learned from an independent source that he was already married. This recital of undisputed facts proves absolutely both the existence of a valid contract of marriage and its breach by the defendant.

The defendant did not see fit to take the stand himself, nor did he introduce any evidence in his behalf.   His defense, as set out in

his brief statement, and now in argument, is an alleged rescission of the contract by mutual agreement, and he rests this contention upon a letter which the plaintiff wrote to the defendant the next morning after he had bluntly, if not brutally, asked for the return of the engagement ring and added that it made no difference whether she gave it to him or not, as he was all done with her.   That letter is in these words:

"Fort Fairfield, Me.,

Dec. 23, 1919.

DEAR CHARLIE:—

Thought I would write to you this morning.   You seem to put me pretty low.   I will tell you that I only listened twice and both times I was not sly enough to keep still.   If I had been listening before, you would have heard something too.   Besides we haven't been on Ginn's line two months.   I am not sly and sneaky as you seem to think. I try to be square and I say just what I think and there isn't anything kept back.   Perhaps that is why I don't get along so well as some.

You excuse her because she cares for you, perhaps she does.   Perhaps you think I don't care.   But as I see that you don't care for me and want to call it off you may.   I don't want to thrust myself on anyone.

I don't feel that I have done anything wrong.   I haven't done any little mean tricks which I could have done.   If you cared for me, I wouldn't have to think of you running after other girls.   Besides I can't treat you as nice as I could when I know you run after other girls and say that you are engaged to me.   I notice that it didn't take much for you to lose confidence in me, but you expect me to have great confidence in you, no matter what you do.   You have been only looking for a chance on me and this is the only chance you have had, and you have taken advantage of it.

Your friend,

STELLA."

The defendant relies wholly upon the two sentences:   "But as I see that you don't care for me and want to call it off you may.   I don't want to thrust myself on anyone" as proving a mutual agree-

ment of rescission. These two sentences should not be isolated. The rescission of a contract, like its creation, is a matter of joint agreement, a matter of intention, and taking the entire contents of the letter together it is obvious that no such intention existed in the plaintiff's mind. The defendant had already afforded the plaintiff the opportunity to rescind on the previous evening when he began the conversation by asking her if she was ready to surrender to him her engagement ring, which was the outward and visible sign of their plighted troth. She could then and there have released him if she desired to do so, and the contract might then have been rescinded by mutual consent. But she stoutly refused and replied "no" she was not ready to surrender the ring. She retained it. That attitude she consistently maintained throughout the entire transaction. This letter written within twelve hours after his repudiation of their betrothal, is merely the natural outcry of a young woman who felt that her affianced lover had deceived her in his attentions to another, and had eagerly taken advantage of an unimportant act on her part to break an engagement which he was seeking to avoid. In her sense of outraged pride she says that she does not wish to thrust herself upon anyone, and that if he wishes to call the engagement off he may do so, but nowhere does she say or intimate that she absolves him either from the contract itself or from the consequences of its breach. The whole spirit of the letter negatives such a claim and is in substance, "I am in no way at fault. If you wish to break the engagement of course you have the power to do so." But that is far different from a voluntary agreement to rescind. In fact it is quite the reverse.

Another difficulty with the defendant's contention on this point is that he had already broken the contract before the letter was written. There was nothing to mutually rescind. Rescission by agreement implies an existing and unbroken contract, not a broken one. There might of course be a waiver on the part of the plaintiff, the voluntary relinquishment on her part, of a known right, but there is nothing on which to base such a waiver here. The plaintiff distinctly testified that she had never released the defendant from the engagement and there is no evidence that she released him from the consequences of his breach. It is significant that the defendant did not take the stand to make any claim of rescission or waiver or state any facts to substantiate the same, but rested his whole defense upon two excerpts

from a letter written by the plaintiff under the stress and strain of shattered hopes and expectations. It is also significant that in the conversation between the parties about the first of January, a week after the letter was written, he did not claim any mutual rescission by virtue of that letter or otherwise, but on the contrary told her it made no difference what she said, she might as well keep still, because he was "all done with her." A broken not a rescinded contract was firmly fixed in his mind as well as in hers.

The finding of the jury in favor of the plaintiff upon this, as upon all other material points, should stand.

*Motion for new trial over-ruled.*